The facts material are:
The plaintiff is a corporation, doing business in Hickory, N.C. prior to and since 1 January, 1920. The defendant is a citizen of Durham, N.C. residing there prior to and since 1 January, 1920. On 3 January, *Page 60 
1920, and prior thereto, C. W. Andrews Bros. were doing business in Durham, N.C. and, in connection with their business, purchased lumber, boxes and other lumber products, and also sold to the trade such products. The Hickory Novelty Company deals in lumber of various kinds, manufacturing moulding and other wood products for the trade.
The firm of C. W. Andrews Bros. was composed of C. W. Andrews and several other sons of the defendant D. W. Andrews.
Plaintiff contends that D. W. Andrews was a member of this firm, which was denied by him. This firm, prior to 3 January, 1920, was doing business with plaintiff and Hutton Bourbonnais Company, and had become indebted to Hutton Bourbonnais Company, and contends that "the defendant D. W. Andrews, desiring that the said firm of C. W. Andrews Bros. should continue to do business with the said plaintiff, and with a view of making the them existing debt secure, did, on 3 January, 1920, guarantee to the Hutton Bourbonnais Company, the then existing and outstanding account of $3,509.68, as well as to guarantee to the plaintiff and the Hutton 
Bourbonnais Company the payment of all debts and obligations of C. W. Andrews Bros. That might be created or become due in the future by reason of business transactions to be conducted between the firms."
The defendant, in answer, says:
"The defendant admits that C. W. Andrews and two of his other sons, under the firm name of C. W. Andrews Bros., had been doing business with plaintiff and Hutton Bourbonnais Company prior to 3 January, 1920, and had become indebted to plaintiff and said company in the sum of $3,509.68, did write the firm of Hutton Bourbonnais a letter, under date of 3 January, 1920." The letter is as follows:
"This will advise that I am interested in C. W. Andrews Bros., and will personally see that all business transactions between C. W. Andrews 
Bros. and Hutton Bourbonnais Company and Hickory Novelty Company are settled and adjusted satisfactorily entirely with your concerns.
"I am enclosing herewith a letter form the Home savings Banks of Durham, N.C. which will show you that I am personally responsible for all outstanding accounts up to this date, and all accounts which will follow.
"If this is not entirely satisfactory with you, I will forward, as soon as you advise, other letters or credentials, which I am sure will be entirely satisfactory with you.
"The outstanding account, which amounts to $3,509.68, will be paid 11 January, 1920, and from now on if there is anything pertaining to this business which is questionable, please advice me personally at once, and I will straighten out the matter entirely to your satisfaction. *Page 61 
"We have in view a large volume of business for the future, and trust that you will give it your personal attention upon receipt of same.
"Thanking you for past favors, and trusting that you are enjoying the best of health, Yours very truly, D. W. ANDREWS."
The Home Savings Bank letter enclosed is as follows:
"MESSRS. HUTTON BOURBONNAIS,
Hickory, N.C.
"GENTLEMEN: We wish to advise you in regard to the financial standing of Messrs. C. W. Andrews Brothers, of this city. We have been doing business with these gentlemen for a number of years, and have always found them to be prompt, reliable and fully able to carry out their financial obligations. They stand well in our community and can get any reasonable amount of credit they desire. You will be safe in extending them a line of credit to $10,000 for thirty or sixty days, should they ask it. Mr. D. W. Andrews, of the firm, is worth over $30,000. Should you care to have further information regarding these gentlemen, will be glad to have you write me.
 "Very truly yours, HOME SAVINGS BANK, T. B. PRICE, Cashier."
The plaintiff further contends: "That after said letter of credit, or guarantee, of D. W. Andrews, along with a letter of the Home Savings Bank of Durham, N.C. was received by plaintiff and the Hutton Bourbonnais Company, the said firm of C. W. Andrews Bros. continued to do business with plaintiff during the remainder of the year 1920, and continued on through 1921 and for a portion of the year 1922." That about 10 June, 1922, the firm of C. W. Andrews Bros. owed plaintiff a balance of $3,924.12 and interest. The total sales of goods to C. W. Andrews Bros. after the letter of 3 January, 1920, of D. W. Andrews was $15,939.89, with credits left on 10 June, 1922, above amount ($3,924.12) due. A. B. Hutton testified that the amount of the old account mentioned in D. W. Andrews' letter of $3,509.68 had been paid.
The record shows that A. B. Hutton was interested in the plaintiff, Hickory Novelty Company, and was acting for plaintiff. The amount sued on has never been questioned as being inaccurate, as far as the amount is concerned. C. W. Andrews Bros. delayed making payment, and plaintiff wrote D. W. Andrews, reminding him of his obligation. *Page 62 
On 21 July, 1922, D. W. Andrews wrote from Durham, N.C. the following letter to A. B. Hutton at Hickory, N.C.:
"I am in receipt of your letter again calling my attention to the account of C. W. Andrews Bros., and have discussed the matter with C. W. Andrews, and feel that they will be in a better position within a short time to cancel this indebtedness. They are to mail you a check for $500, so that you will have it not later than the first of August, and, too, they will mail you a check every fifteen days after August 1st to take care of this account. In the event that they do not carry out the above plans, kindly notify me and I will see that they are carried out to your satisfaction. This plan will enable them to cancel this indebtedness sooner than the note plan would. I believe and feel that it would be more satisfactory in the long run for them. With kind personal regards, I am very truly yours."
On 1 July a check for $500 was paid on the account by C. W. Andrews 
Bros., and on 5 August a check for $250 was paid on the account, reducing the indebtedness to $3,174.12 and interest.
On 1 August, 1922, A. B. Hutton wrote to D. W. Andrews a letter to Durham, N.C. as follows:
"Your esteemed favor of July 21st has been received, and I thank you for satisfactory reply.
"I note in your letter that the firm of C. W. Andrews Bros. is to send the Hickory Novelty Company $500 August 1st and $500 every fifteen days thereafter until the account is paid and discharged in full. I further note that you will be responsible for this agreement being carried out to my satisfaction, which is in accordance with your former guarantee to us, made on 3 January, 1920, to which I referred in my former letter to you.
"I wish to assure you that I have, and our firms have, the kindest feeling for you, and wish you and your business the greatest success, but you appreciate that we must ask that the arrangement suggested by you be carried out, as we really need the money.
"I will expect the $500 you say will be paid 1 August, by tomorrow, the 2d; so please see that I am not disappointed, as up to this time we have not had remittance.
"With kind personal regards, I am yours very truly."
The plaintiff contends that, "by reason of the guarantees of defendant to plaintiff, and that by reason of the guarantees made by defendant, causing plaintiff to delay in the collection of its debt, all of which, taken together and singly, the plaintiff alleges, makes defendant liable for its debt against C. W. Andrews Bros., and it asks judgment against defendant accordingly." *Page 63 
The defendant contends that the firm copartnership doing business under the name of C. W. Andrews Bros. was dissolved on 1 February, 1921; that C. W. Andrews, being chief stockholder, and several of his brothers, with D. W. Andrews, organized a corporation as C. W. Andrews Bros., Inc., and the corporation is due the sum contended for by plaintiff and not the defendant, and that the corporation, at the time of the institution of this suit, was in the hands of a receiver and has since been put into bankruptcy; that he never guaranteed to plaintiff "any indebtedness due it by said corporation, and is advised, believes and alleges that the letter written by him on 3 January, 1920, does not in any way make him responsible for the debts or obligations of said corporation."
The articles of incorporation were filed in the office of the Secretary of State, 29 January, 1921, and in the clerk's office at Durham, N.C. 9 February, 1921.
C. W. Andrews Bros., and the corporation formed, have become insolvent.
It was admitted that the entire account is filed in the bankruptcy proceedings against C. W. Andrews Bros., Inc.
C. H. Cline, secretary of Hickory Novelty Company, and bookkeeper and office man, testified: "I thought all the time I was dealing with C. W. Andrews Bros., the people we started with. I had no information of any change in the firm. I ran the account in that way — charged everything to C. W. Andrews Bros., and credited everything as of the date of the check I received; everything was entered on this book that way."
D. W. Andrews testified, in part: "After I wrote that letter to the head of the Hutton Bourbonnais Company, I never received any reply. I have been knowing Mr. Hutton for quite a number of years. I bought boxes and lumber of different kinds while I was with the American Tobacco Company. I never knew anything about the Hickory Novelty Company until this suit was brought."
"Q. Did you ever have any notice from the Hickory Novelty Company that they had acknowledged this letter here, and that they were extending credit on that letter?"
"A. I did not. To my personal knowledge, the first I ever knew that the Hickory Novelty Company sold C. W. Andrews Bros. or C. W. Andrews 
Bros., Incorporated, was when this suit was entered. I didn't know there was a Hickory Novelty Company until this suit was brought. There was not any copartnership by the name of C. W. Andrews Bros. after 1 February, 1921. I never saw Mr. Johnson or Mr. Hutton when they came down about that indebtedness." *Page 64 
At the close of all the evidence, defendant renewed motion for judgment as of nonsuit, which motion was allowed, the court being of the opinion that there was not a guarantee, as contended for by the plaintiff; that the letter addressed to Hutton Bourbonnais Company shows that if the defendant be liable at all, he is liable by reason of the fact that he was a member of the firm of C. W. Andrews Bros., and not as a guarantor.
Plaintiff excepted, assigned error to this ruling, and appealed to the Supreme Court.
The only question presented on the entire record is: Did the defendant guarantee to plaintiff the account sued on, $3,174.12 and interest? We are of the opinion that he did.
C. S., 987, is as follows: "No action shall be brought whereby to charge an executor, administrator or collector upon a special promise to answer damages out of his own estate, or to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party charged therewith, or some other person thereunto by him lawfully authorized."
The statute applies to contracts of guaranty. Gilmer v. Improvement Co.,170 N.C. 452; Partin v. Prince, 159 N.C. 555.
A written promise by one to pay the debt of others, that "just as soon as the dry kiln gets in operation, I will see that your bill is paid," is not a continuing guaranty, but, by fair implication, refers to an account already made and stated. Supply Co. v. Finch, 147 N.C. 106.
In Green v. Thornton, 49 N.C. 232, Battle, J., said: "It is not and cannot be denied that a guaranty in writing, made at the time of a contract between two or more persons, is binding upon the guarantor, because it is founded upon the consideration which exists between the principal parties. But if it be made afterwards, without any new consideration, then it is not obligatory, and putting it in writing, if not under seal, will not help it.Rann v. Hughes, 7 Term Rep., 350, note a. The statute of frauds does not require the consideration to be in writing, and it may therefore be proved by parol. Miller v. Irvine, 1 Dev. and Bat. Rep., 103." Partin v. Prince,supra. *Page 65 
The statute does not apply to a promise to pay the debt of another out of the debtor's property in the promissor's hands. Mercantile Co. v.Bryant, 186 N.C. 553.
The statute does not apply where it is in the nature of an original obligation of the promissor. Marrow v. White, 151 N.C. 96; Partin v.Prince, supra.
In 12 R. C. L., 1053, it is said: "A guaranty has been defined by statute to be a promise to answer for the debt, default, or miscarriage of another person.' This definition substantially conforms to the judicial conception of a guaranty, which may fairly be summed up as a promise to answer for the payment of some debt or the performance of some obligation, on default of such payment or performance, by a third person who is liable or expected to become liable therefor in the first instance." Grocery Co.v. Early, 181 N.C. 460; Enc. Dig. of N.C. Vol. 14, "Guaranty," p. 275et seq.
"If the object of the guaranty is to enable the principal to have credit over an extended time, and to cover successive transactions, it is a continuing one; but if the intention of the guarantor, as indicated by the language used, is that but one transaction is to be covered by the guaranty, it is a limited one." Childs on Suretyship and Guaranty, sec. 23, p. 20. See 12 R. C. L., 1061.
In 12 R. C. L., 1062, part of section 11, it is said: "There seems to be no general rule for determining whether a guaranty is continuing; each must be construed according to its terms and the surrounding circumstances, to show which parol evidence is admissible. If the parties treat an instrument as a continuing guaranty, and its terms are not inconsistent with such construction, the courts will adopt that view."
In Scovill Mfg. Co. v. Cassidy, A. E. Anno. Cases (1898 E.), 611 (275 III., 462), under "Continuing Guaranties," it is said: "Where by the terms of the guaranty it is evident that the object is to give a standing credit to the principal to be used from time to time, either indefinitely or for a certain period, it is generally deemed a continuing guaranty. . . . It was said in Chester County Nat. Bank v. Thomas, 220 Pa. St., 360; 60 A. 813, `Whether a contract of guaranty is a continuing undertaking is a question of intention which must be gathered from the instrument itself, or from the course of dealings between the parties or from both.' If it appears that a future course of dealing for an indefinite time, or a succession of credits to be given, was contemplated by the parties, the contract will be construed to be a continuing guaranty," citing a wealth of authorities.
In First Nat. Bank v. Waddell (74 Ark. 241), 4 A. E. Anno. Cases, 822, under "Continuing Guaranties," it is said: "In like manner, a guaranty will be held to be continuing if it is made in language *Page 66 
which shows that the parties intended that it should cover not only present transactions, but also future transactions for an indefinite length of time," citing many authorities.
We think the case of Newcomb v. Kloeblen, 77 N.J. L., 291, in point. The head-notes to that case are as follows:
"The plaintiffs were commission merchants; they refused to make any further sale to the defendant's son unless his account was guaranteed by defendant. Defendant wrote to the plaintiffs, `I will be responsible for any bill that my son James will make': Held, that use of the word `any' did not limit the guarantee to the one bill of goods delivered when the guarantee was given, but that it was a continuing guarantee.
"In an action on a guarantee, where the issue is whether the guarantee is a continuing one, conversations between the guarantor and his son at the time of executing the guarantee are inadmissible for the purpose of showing the meaning of the guarantee.
"In construing a contract of guarantee, whatever may be the limitations as to time or amount, the rule of construction is to take the words of the contract together with the surrounding facts as the exponent of the meaning of the parties."
The Court, in that case, said: "The fact of the previous dealing between James Kloeblen and the plaintiffs there appeared, and the absolute necessity on his part for a general credit for the future, as the plaintiff refused to make him further sales unless his father, the defendant, would guarantee his account with them. Under these circumstances the defendant guaranteed to be responsible for `any bill that my son James will make,' and this leads inevitably to the conclusion that the guarantee was to remain continuing until revoked."
Similar cases are as follows: "Thus a guaranty, without limitation as to time or amount, of the payment `of all bills of goods sold or that may be sold,' is a continuing one." Conduitt v. Ryan. 3 Ind. App. 1. See, also,Doyle v. Nichols. 15 Colo. App., 458; Boehne v. Murphy. 46 Mo., 57. "A letter of credit stating that `I will guarantee their engagements, should you think it necessary, for any transaction they may have with your house,' is a continuing guaranty." Grant v. Ridsdate, 2 Har. J. (Md.), 186.
We think that the letters and undisputed facts, as appear from the record, disclose that the transaction was a "continuing guaranty." The guaranty was in writing, as required by the statute, "To answer the debt, default or miscarriage of another person." The question of the consideration of the promise or implied promise of the defendant to pay the outstanding account, which amounted to $3,509.68, does not arise on the record, as that amount has been paid. If it did arise, the fact *Page 67 
that the defendant stated that he was interested in C. W. Andrews Bros., and the letter of 3 January, 1920, taken in its entirety, would imply that he was a partner with his sons in the business and create liability as a partner. The Home Savings Bank letter, enclosed in D. W. Andrews' letter of 3 January, 1920, says: "Mr. D. W. Andrews, of the firm, is worth over $30,000."
We think the letter of 3 January, 1920, was a continuing guaranty by defendant to both Hutton Bourbonnais Co. and Hickory Novelty Co., for the future debts or obligations that were incurred by C. W. Andrews Bros. The letter is an effort to get a line of credit for C. W. Andrews Bros., and enclosed a letter from the bank showing his financial standing. He stated in the letter: "I am personally responsible for all outstanding debts up tothis time, and all accounts that will follow." He says: "We have in view a large volume of business for the future," showing that he expected C. W. Andrews Bros. to continue to do business with the two firms, including the plaintiff. He knew that the plaintiff knew his sons were members of the firm of C. W. Andrews Bros., and in the course of business would probably become indebted to it, and he was using every expression he could in his letter to have plaintiff satisfied that the defendant would be responsible for the obligations of C. W. Andrews Bros. then existing and to be incurred in the future. "I am interested in C. W. Andrews Bros., and willpersonally see that all business transactions between C. W. Andrews Bros.and Hutton Bourbonnais Co. and Hickory Novelty Company are settled andadjusted satisfactorily entirely with your concerns." The letter is addressed to Hutton Bourbonnais Co., but defendant knew that the Hickory Novelty Company was closely allied with them, that the same interests were in charge of the two companies. The language in the first part of the letter in which the two firms are referred to as "your concerns."
In considering the letter of 3 January, 1920, and that of the Home Savings Bank, bearing upon the intention and construction, we should consider the surrounding circumstances and should take into consideration the letters of 21 July, 1922, and 1 August, 1922, which indicate that the defendant understood the liability he had created and incurred. These letters all speak for themselves, and a more extended analysis we deem unnecessary to show a "continuing guaranty." The record shows plaintiff had no notice of the partnership changing to a corporation. The evidence shows the account was made in the name of C. W. Andrews Bros. We do not think that the language of the letter of 3 January, 1920, calls for notice to be given the defendant. The facts in this case are different from cases cited by defendant in his brief. This was an unfortunate business venture on the part of the defendant's sons. *Page 68 
Humanly, and rightly, the defendant was trying to help his sons to success, and allowed them his credit. The defendant says in his evidence: "I stated in my answer that the reason I signed the letter of guarantee was because I wanted to help the boys; I was interested in the boys; any father is in his sons, I presume. I feel that way about mine."
This statement is laudable on the part of the defendant and, under the facts in this case, he made the "continuing guaranty" to help his boys. They have become insolvent; he must fulfill his obligation.
For the reason given, the judgment of nonsuit is
Reversed.