ANDREW GENNETT AND N. W. GENNETT, PARTNERS, TRADING AND DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF GENNETT LUMBER COMPANY, v. E. LYERLY.

(Filed 10 October, 1934.)

**1. Frauds, Statute of, A a—C. S., 987, does not apply to an original promise.**

Where the party sought to be charged is in fact the direct paymaster, or makes an original promise to answer for the debt of another, the statute of frauds, C. S., 987, does not apply to relieve him of liability.

**2. Same—Party sought to be charged held not to be original promisor.**

The president and treasurer of a corporation who owns a large amount of the corporation's stock, although interested in the successful and profitable operation of the corporation, has no personal, immediate and pecuniary benefit in the purchase of materials by the corporation for use in its manufacturing processes so as to make him an original promisor on the corporation's agreement to pay the purchase price of such materials, and where he pleads the statute of frauds, C. S., 987, he may not be held personally liable for the purchase price because of verbal promises to answer for the debt made in his behalf by the secretary of the corporation as his alleged agent.

**3. Frauds, Statute of, E b—Writing held not to be continuing guaranty, and bound defendant only for order upon which it appeared.**

A manufacturing corporation purchased several carloads of lumber from plaintiff, each carload purchased being an independent transaction, based upon independent orders. One of the orders signed by the secretary of the corporation contained a notation that the president of the corporation should be personally liable for the purchase price, and the corporation paid for the lumber shipped under this order. Plaintiff sought to hold the president of the corporation personally liable for the purchase price of the lumber sold under other subsequent orders upon the theory that the secretary signed the notation as agent for the president, either duly authorized or by estoppel. The president pleaded the statute of frauds, C. S., 987. The secretary testified that he had no authority to bind the president personally for materials purchased by the corporation. *Held,* plaintiff was not entitled to recover, even assuming that the president was bound by the notation, since the extent of liability thereunder was for the one carload of lumber shipped under the order which had been paid for, the notation not constituting a continuing guaranty, since each order was independent of the others and constituted a separate transaction.

**4. Same—**

The fact that goods are shipped to a corporation with a notation that the president of the corporation was to be responsible for the payment of the purchase price does not impose liability upon the president upon default of the corporation.

SCHENCK, J., took no part in the consideration or decision of this case.

CIVIL ACTION, before *Schenck, J.,* at April Term, 1934, of BUNCOMBE.

The plaintiffs are lumber dealers, and at the times complained of the defendant was president and treasurer of the Yeager Manufacturing Company, a corporation organized and existing under the laws of North Carolina. On 15 June, 1932, the Yeager Manufacturing Company gave an order to the plaintiffs for one car of lumber. The order had upon it the following notation: "Either discount or accept and endorsed by E. Lyerly." The lumber was shipped and paid for. Thereafter, on 23 September, 1932, the Yeager Manufacturing Company inquired of the plaintiff if it had certain specified lumber for sale and available for shipment. On 24 September, 1932, the plaintiffs wrote the Yeager Manufacturing Company stating that they had two cars of certain lumber, and further stating, "Trusting that you will favor us with an order, we are," etc. On 27 September, 1932, the Yeager Manufacturing Company wrote the following letter to the plaintiffs: "We are in receipt of your favor of 24 September, quoting us a price of $18.00 delivered Hickory on two cars 4/4 No. 1, Common and Better, Sound, Wormy Chestnut. Please make shipment of these as soon as possible. Yours very truly, Yeager Mfg. Company, Walker Lyerly, Secretary." Thereafter, on 29 September, the plaintiffs wrote the following letter: "Yeager Mfg. Co., Hickory, N. C., Gentlemen: We are in receipt of your letter advising us that we can ship two cars of 4/4 No. 1, Common and Better, Sound Wormy Chestnut at $18.00 delivered Hickory, N. C. We wish to thank you for this business and trust this stock will be satisfactory in every way. Our terms on this order are 2%—30 days or a note for 60 days endorsed by Mr. E. Lyerly. Yours very truly, Gennett Lumber Company." On 17 October, 1932, the Yeager Manufacturing Company wrote the plaintiffs inquiring if they had certain poplar lumber. On 18 October, 1932, the Gennett Lumber Company wrote a letter to Yeager Manufacturing Company, stating that they had such a car, and further stating: "Trusting that you will favor us with an order for this car and that it will be satisfactory with you to pay for this car in thirty days less 2% or give us your note endorsed by Mr. E. Lyerly for sixty days." On 24 October, the Yeager Manufacturing Company wrote the plaintiffs the following letter: "We are in receipt of your favor of the 18th. Please enter our order for one car of the 5/8 Poplar same grade and about the same amount as shipped before. We trust you will ship this right out to us. Yours very truly, Yeager Mfg. Company, Walker Lyerly, Secretary." The Yeager Manufacturing Company went into bankruptcy in December, 1932, and thereafter, on or about 8 February, 1933, the plaintiffs instituted this action to recover of defendant E. Lyerly the purchase price of said three cars of lumber, amounting to approximately $782.54, after deducting the freight.

The defendant E. Lyerly filed an answer denying that he had assumed any personal liability for the account, and further pleaded the statute of frauds as contained in C. S., 987.

The evidence tended to show that E. Lyerly was engaged in the hosiery business and owned a large amount of stock of the Yeager Manufacturing Company, and that he was, in the fall of 1932, president and treasurer of the corporation, and that his brother, Walker Lyerly, was general manager and secretary thereof. The plaintiffs offered evidence tending to show that when the shipment of 15 June, 1932, was made that they did not accept the order until Walker Lyerly wrote or had written on said order, "Either discount or accept and endorsed by E. Lyerly." There was further evidence that the Yeager Manufac-.turing Company was considered a bad credit risk, and that plaintiffs would not have shipped the lumber except for the understanding that E. Lyerly was personally responsible for lumber purchased by the corporation. Plaintiff's witness said: "I never had any conversation with E. Lyerly about the purchase of lumber. I talked with him a little. No, I never asked him about guaranteeing any bills. In the 18 months that I called on the Yeager Manufacturing Company and saw him time and again I never mentioned to him one time whether he guaranteed these bills or whether he would be responsible for them, or anything like that." Plaintiffs also offered as a witness Mr. Walker Lyerly, secretary of the corporation. He said: "I bought some stuff for the Yeager Manufacturing Company through June, July, August, September, and October, 1932, before it went into bankruptcy in December. . . . E. Lyerly signed some checks as treasurer of the company to pay bills. I would not sign any as treasurer in his place. . . . He was just the president of it. He did not have anything to do with the selling or the buying or anything like that. He did sign some checks to pay the debts of the company. . . . Any orders that Mr. Lyerly guaranteed they would have to go to Mr. Lyerly and get the guarantee, and he would have to sign the order. It was not any good unless he did. . . . We handled a lot of acceptances. Those that refused, Mr. Lyerly would endorse acceptances. I could not endorse an acceptance. That is the way we handled 85 per cent of the cases we had there. Mr. Lyerly was not present when I wrote that. I do not know whether he saw it or not. . . . I mean he would have to sign the order. E. Lyerly had been doing that off and on in some cases, not in all cases, since the reorganization in 1930. (Q.) It was E. Lyerly's custom, when requested, to guarantee the account? (A.) People would go by to see him, yes. Mr. E. Lyerly did not have any active connection with the Yeager Manufacturing Company after I went there. He was president and treasurer. . . . E. Lyerly guaranteed some bills for the Yeager Manufacturing Company. His method of doing this was that salesmen

would go to see him and he would endorse or sign the order. Whenever he guaranteed a bill he would do it himself. I had no authority to guarantee for him. (Q.) If you told Mr. Potter that you did not have authority to guarantee for Mr. Lyerly, you don't remember telling him? (A.) No, I did not have authority."

J. W. Potter, a witness for plaintiffs, testified that he was engaged in selling lumber for the plaintiff and others, and that he often visited the plant of the Yeager Corporation in Hickory and saw the defendant on several occasions at the plant, looking over veneers and lumber, and everything in general. This witness also testified the credit of the corporation was bad, and that he made the sale referred to in the order of June 15, 1932. Over the objection of defendant this witness was permitted to testify, in effect, that Walker Lyerly told him that the defendant E. Lyerly "was responsible for all accounts for lumber, and he paid them all except three cars," and that E. Lyerly "had agreed to endorse all lumber accounts." The witness continued: "I took Walker Lyerly's word for his brother, E. Lyerly, being ready to endorse the accounts and being responsible. I thought he was general manager and a member of the company or he would not represent that. . . . He stated that they had arrangements that Mr. E. Lyerly would endorse all accounts for lumber that was bought by Yeager Manufacturing Company." . . .

The general issue of indebtedness was submitted to the jury and answered in favor of the plaintiffs. The verdict awarded to the plaintiffs the sum of $782.54, with interest. From judgment rendered upon the verdict, the defendant appealed.

*Jones & Ward for plaintiffs.*
*Thomas P. Pruitt for defendant.*

BROGDEN, J. The defendant was the president and treasurer of a corporation known as the Yeager Manufacturing Company. His brother, Walker Lyerly, was secretary and treasurer thereof. Walker Lyerly, as such general manager, purchased from plaintiffs for and in behalf of the corporation three carloads of lumber. The correspondence between the parties relating to said lumber discloses that the corporation ordered the lumber, and that the plaintiffs shipped the same upon such corporate orders. In the letter of 29 September, 1932, written by the plaintiffs, was a memorandum, as follows: "Our terms on this order are 2%—30 days or a note for 60 days endorsed by Mr. E. Lyerly." The corporation went into bankruptcy in December, 1932, and the plaintiffs bring this action against the defendant, alleging that he was individually responsible for the payment of said lumber. The defendant denied liability and pleaded C. S., 987, as a defense. This statute provides, in

substance, that "no action shall be brought . . . to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith or some other person thereunto by him lawfully authorized." The record discloses that the defendant received no property as a result of the transaction, and signed no letter or memorandum. The record further discloses that the entry on the letter of plaintiffs, dated 29 September, 1932, was not signed by E. Lyerly, nor is there evidence that he ever saw the letter or knew of its existence.

The plaintiffs stake their case and assert liability against the defendant upon three theories, to wit: (1) That Walker Lyerly, the brother of defendant, and general manager of the corporation, was the agent of the defendant, with power and authority to bind him for the debts of the corporation; (2) that the course of dealing between the parties constituted Walker Lyerly an agent of defendant by operation of estoppel; (3) that notice to the corporation of the terms upon which the lumber was shipped was binding upon the defendant, who was not only president and treasurer of the company, but who also owned a large portion of stock.

The solution of the first question of law depends, in part, upon whether the defendant E. Lyerly was an original promisor. All the decided cases construing C. S., 987, are to the effect that if the party sought to be charged is in fact the direct paymaster or makes an original promise to answer for the debt of another that the statute of frauds constitutes no defense and affords no protection against liability. *Peele v. Powell,* 156 N. C., 553, 73 S. E., 234; *Handle Co. v. Plumbing Co.,* 171 N. C., 495, 88 S. E., 514; *McCall v. Institute,* 187 N. C., 757, 122 S. E., 850; *Beck v. Halliwell,* 202 N. C., 846, 163 S. E., 747. This idea was expressed in *Peele v. Powell, supra,* as follows: "Where the promise is for the benefit of the promisor, and he has a personal, immediate, and pecuniary benefit in the transaction, as in *Neal v. Bellamy,* 73 N. C., 384, and in *Dale v. Lumber Co.,* 152 N. C., 653, or where the promise to pay the debt of another is all or part of the consideration for property conveyed to the promisor, as in *Hockaday v. Parker,* 53 N. C., 17, . . . or is a promise to make good notes transferred in payment of property, as in *Adcock v. Fleming,* 19 N. C., 225, . . . the promise is valid although in parol.

"If, however, the promise does not create an original obligation, and it is collateral, and is merely superadded to the promise of another to pay the debt, he remaining liable, the promisor is not liable, unless there is a writing; and this is true whether made at the time the debt is created or not."

The evidence in this case, as we interpret it, does not disclose that the defendant had "a personal, immediate, and pecuniary benefit in the transaction." Of course, he was a stockholder and necessarily interested in the successful and profitable operation of the corporation; but such interest was no more "personal and immediate" than the interest of a landlord in a profitable crop made by a tenant, and such interest was declared in *Peele v. Powell, supra,* to be insufficient without a written memorandum, although the landlord had verbally promised to pay the debt of the tenant. Consequently, it necessarily follows that no verbal promise by the defendant to pay the debt of the corporation would impose liability upon the defendant in view of the facts and circumstances disclosed by the present record.

The next question is: Was there such a writing or written memorandum as the statute contemplates? Walker Lyerly, the brother of defendant, and general manager of the company, ordered lumber from the plaintiffs. The plaintiffs shipped the lumber and in acknowledging to the corporation the order and its thanks for the business, wrote in such letter of acknowledgment the words, "Our terms on this order are 2%—30 days or a note for 60 days endorsed by Mr. E. Lyerly." This letter was signed by the plaintiffs. There is no suggestion that even Walker Lyerly signed this memorandum either in behalf of the company or in behalf of the defendant E. Lyerly. Therefore, nothing else appearing, the plaintiffs were out of court. But the plaintiffs assert that on 15 June, 1932, the Yeager Manufacturing Company ordered lumber from them, and that Walker Lyerly, for and in behalf of the company, had signed an order containing the words "either discount or accept and endorsed by E. Lyerly." Doubtless the words "accept and" are intended for the word acceptance. No point, however, is made of that. There was further evidence that the defendant E. Lyerly had paid for that car of lumber with a check signed by him as treasurer. There was no evidence that any acceptance had been given by him for such shipment, or that he had endorsed any negotiable instrument of any character evidencing the purchase price thereof. Indeed, the witness for plaintiffs testified: "I never had any conversation with E. Lyerly about the purchase of lumber. I talked with him a little. No, I never asked him about guaranteeing any bills. In the eighteen months that I called on the Yeager Manufacturing Company and saw him time and again, I never mentioned to him one time whether he guaranteed these bills or whether he would be responsible for them, or anything like them."

Hence, as the defendant had never made an original promise or verbally agreed to become paymaster, and as there was no writing signed by him in compliance with the statute of frauds, his liability must rest

upon the notation made by Walker Lyerly on the order of 15 June, 1932. Walker Lyerly was placed upon the witness stand by the plaintiffs and testified that he had no authority to bind the defendant.

Moreover, assuming that E. Lyerly was bound by the notation, the extent of his liability was for the purchase price of that particular car of lumber, and it is admitted that the same was paid in due time by the corporation. Such notation did not constitute a continuing guaranty as disclosed in *Novelty Co. v. Andrews,* 188 N. C., 59, 123 S. E., 314. The record discloses that the shipments of lumber from the plaintiffs to the corporation were all independent transactions, and based upon independent orders. It follows, therefore, that E. Lyerly is not liable for the three cars of lumber in controversy, by virtue of the notation on the order of 15 June, 1932.

Nor does the fact that the lumber was shipped to the corporation with a notation that E. Lyerly was to be responsible for the payment of the purchase price impose liability upon him. *Asbury v. Mauney,* 173 N. C., 454, 92 S. E., 267; *Bank v. Courtway,* 200 N. C., 522, 157 S. E., 864. It was held in the *Courtway case, supra,* that a resolution of the board of directors of a corporation did not impose personal liability upon them to the payee of a note. Manifestly, a letter written by a shipper would not impose a greater obligation than a formal resolution duly adopted.

In the final analysis, the evidence discloses that E. Lyerly was not an original promisor or paymaster as contemplated by law, and that there was no writing signed by him or his agent "thereunto lawfully authorized," and, consequently, the motion for nonsuit should have been granted.

Reversed.

SCHENCK, J., took no part in the consideration or decision of this case.