## T. P. WARREN v. EDWARD R. WHITE, JR.

(Filed 29 January, 1960.)

**1. Frauds, Statute of § 5—**

Where an incorporator and owner of almost all of the capital stock of a corporation, in hiring a new manager after the company was in serious financial difficulties and the original capital lost, promises that he would personally pay to the manager any sums the manager advanced in the company's behalf, the promise is an original promise not coming within the purview of the statute of frauds, G.S. 22-1, since the promisor has a personal, immediate and pecuniary interest in the matter as distinguished from an indirect benefit which would accrue to him by virtue of his position as stockholder, officer or director of the corporation.

**2. Same—**

Where there is no conflict in the evidence as to the situation of the parties and that defendant promised to pay plaintiff for any sums advanced by plaintiff in behalf of defendant's corporation, the main controversy being whether such promise was conditional or unconditional, the court may submit the case to the jury upon instructions to answer the issue of whether defendant promised to pay plaintiff any sums so advanced in the negative if the jury were not satisfied from the greater weight of the evidence that the promise was unconditional and that defendant made the promise, and the refusal to submit an issue tendered as to whether the promise was an original promise will not be held for error.

APPEAL by defendant from *Olive, J.,* April 20 Term, 1959, of FORSYTH.

Civil action to recover $4,693.13, allegedly advanced by plaintiff to Winston-Salem Motors, Inc., in reliance upon the oral promise and agreement of defendant, the corporation's chief stockholder, "that he (defendant) would personally pay to plaintiff any sums plaintiff advanced upon the company's behalf." Answering, defendant denied the alleged agreement.

The corporation, organized in late August, 1957, entered the automobile business under an Edsel dealership. Defendant, a physician, was the principle investor in this venture and owned all capi-

tal stock except $2,000.00. He anticipated that the venture, in two or three years, would become a profitable investment. According to defendant, "the condition of the company was horrible," in October, 1957, when defendant first contacted plaintiff. The Universal C. I. T. Corporation had given notice that it would repossess the cars in the company's possession and foreclose its "floor-plan" covering such cars, thus forcing the company out of business.

Plaintiff had had some thirty years experience in the automobile business. Upon recommendation of a mutual friend, defendant sought plaintiff's advice and offered him the position of general manager of the company. Defendant testified: "I told him (plaintiff) . . . all the money that I had originally placed in this corporation was already lost."

Plaintiff and defendant managed to stall the Universal C. I. T. Corporation a few days while they negotiated with the Wachovia Bank and Trust Company. Upon assurances that additional capital would be invested in the company, Wachovia agreed to finance the company's new cars under a floor plan arrangement.

Plaintiff became general manager, acting in this capacity from October, 1957, to July, 1958. Then, or shortly thereafter, the company went out of business. Plaintiff received, as salary for his services as general manager, the sum of $100.00 per week.

The Edsel did not receive public favor. There were few sales. The Wachovia financing plan did not cover used cars. The Federal Government attached the company's bank account for failure to pay social security taxes. From March, 1958, the transactions involving "traded-in" used cars were handled through a bank account in plaintiff's name at the City National Bank. According to plaintiff, the agreement was that the handling of these used cars was to be plaintiff's personal responsibility and project, for his own profit or loss. According to defendant, these transactions were to be for the account of the company.

It appears that plaintiff, while serving as general manager, advanced his own funds to or for the benefit of the company in an amount (the exact amount being in dispute) in excess of $4,693.13. The sum of $4,693.13 represents, according to plaintiff's contention, the aggregate of six items for which he was not reimbursed either by defendant or by the company. However, at the trial, plaintiff stipulated that the amount sued for in the complaint is subject to a credit of $710.00, to wit, company funds under his control, and asserted a claim for the balance, to wit, $3,983.13.

The court submitted, over defendant's objection, and the jury

answered, these issues: "1. Did defendant contract and agree with plaintiff that he would personally pay the plaintiff any sums plaintiff advanced to Winston-Salem Motors, Inc., as alleged in the Complaint? Answer: Yes. 2. What amount, if any, is the plaintiff entitled to recover of the defendant? Answer: $3,000.00."

Judgment for plaintiff, in accordance with the verdict, was entered. Defendant excepted and appealed, assigning errors.

*Eugene H. Phillips for plaintiff, appellee.*
*Clyde C. Randolph, Jr., for defendant, appellant.*

BOBBIT, J. Defendant's principal assignments of error, directed to rulings on evidence, failure to nonsuit, submission of issues and portions of the charge, draw into focus this crucial question: Is recovery on the alleged oral agreement barred by the statute of frauds?

G.S. 22-1, in pertinent part, provides: "No action shall be brought . . . to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith or some other person thereunto by him lawfully authorized." (Statute of Frauds and Perjuries, 1678, 29 Car. II, c. 3, § 4, Wigmore on Evidence, § 2454, note 6.)

The following statement by Mr. Justice Clifford in *Emerson v. Slater,* 22 How. 28, 16 L. Ed. 360, was quoted with approval by this Court in *Dale v. Lumber Co.,* 152 N.C. 651, 68 S.E. 134, and in *Garren v. Youngblood,* 207 N.C. 86, 176 S.E. 252, 95 A.L.R. 1132, *viz.:* "But whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although *the performance of it* may incidentally have the effect of extinguishing that liability." (Our italics)

Too, in the *Dale* and *Garren* cases, this Court quoted with approval this summary (headnote in official U. S. report) of the rules underlying decision in the leading case of *Davis v. Patrick,* 141 U.S. 479, 12 S. Ct. 58, 35 L. Ed. 826, *viz.:* "In determining whether an alleged promise is or is not a promise to answer for the debt of another, the following rules may be applied: (1) if the promisor is a stranger to the transaction, without interest in it, the obligations of the statute are to be strictly upheld; (2) but if he has a per-

sonal, immediate and pecuniary interest in a transaction in which a third party is *the original obligor,* the courts will give effect to the promise. The real character of a promise does not depend altogether upon form of expression, but largely upon the situation of the parties, and upon whether they understand it to be a collateral or direct promise." (Our italics)

In *Garren v. Youngblood, supra,* the plaintiff recovered on an oral agreement by defendant, an officer, director and stockholder of a bank, that he would be personally responsible for any loss plaintiff might sustain if her funds were permitted to remain on deposit with the bank. This agreement was held to be an original promise upon sufficient consideration and that G.S. 22-1 did not apply. It is noted that the plaintiff, after the bank closed, had filed her claim against the bank and had received a dividend thereon.

In *Brown v. Benton,* 209 N.C. 285, 183 S.E. 292, the defendants, the main stockholders of a corporation, agreed orally to be personally responsible for merchandise shipped to the corporation. According to plaintiff, the understanding was that plaintiff would ship and bill the lumber to B. L. Johnson Company "and they (defendants) would be personally responsible to me." It was held that plaintiff had declared upon an original promise, not within G.S. 22-1. Plaintiff's recovery was upheld.

In *Farmers Federation, Inc., v. Morris,* 223 N.C. 467, 27 S.E. 2d 80, plaintiff sold merchandise to a corporation engaged in the restaurant business upon the defendant's request that credit be extended to the corporation and that he (defendant) would be responsible for all bills so contracted. It was admitted that the defendant was the president and a stockholder in the corporation. The defendant, by answer and by his testimony, denied that he had made the alleged oral promise. Upon the plaintiff's appeal from a verdict in favor of the defendant, a new trial was awarded for error in excluding testimony proffered by plaintiff tending to show *the extent* of the defendant's interest in the corporation and its business. Plaintiff's said proffered testimony was held competent "to show that the defendant had a personal, immediate and pecuniary interest in the transaction."

Decisions in many jurisdictions are reviewed in Annotation, 35 A.L.R. 2d 906, under the caption, "Statute of frauds: promise by stockholder, officer, or director to pay debt of corporation." Two quotations point out the distinction recognized in our decisions, *viz.:*

"As applied to promises by stockholders, officers, or directors, to pay a debt of the corporation, it may be said that the promise is

original where the promisor's primary object was to secure some direct and personal benefit from the performance by the promisee of his contract with the corporation, or from the latter's refraining from exercising against the corporation some right existing in him by virtue of the contract. The benefit to the promisor is to be distinguished from the indirect benefit which would accrue to him merely by virtue of his position as a stockholder, officer, or director. If the benefit accruing is direct and personal, then the promise is original within the rule above discussed, and the validity thereof is not affected by the statute of frauds." 35 A.L.R. 2d 910. As supporting this statement, these North Carolina decisions are cited: *Satterfield v. Kindley,* 144 N.C. 455, 57 S.E. 145, 15 L.R.A. (N.S.) 399, 12 Ann. Cas. 1098; *Beck v. Halliwell,* 202 N.C. 846, 163 S.E. 747; *Brown v. Benton, supra; Farmers Federation, Inc., v. Morris, supra. Gennett v. Lyerly,* 207 N.C. 201, 176 S.E. 275, discussed below, is cited as "recognizing rule."

"Where an oral promise by a stockholder, officer, or director of a corporation is collateral in form and effect, and the consideration was not intended to secure or promote some personal object or advantage of the promisor—as distinguished from the benefit accruing to a person from the mere fact of his being a stockholder, officer, or director—, the promise is collateral and within the statute of frauds." 35 A.L.R. 2d 914. As supporting this statement *Gennett v. Lyerly, supra,* is cited. *Satterfield v. Kindley, supra,* is cited as "recognizing rule."

Defendant relies largely on *Gennett v. Lyerly, supra,* and on *Myers v. Allsbrook,* 229 N.C. 786, 51 S.E. 2d 629.

In *Gennett v. Lyerly, supra,* the defendant, E. Lyerly, who was otherwise engaged in the hosiery business, was the president, treasurer and the owner of a large amount of stock in the Yeager Manufacturing Company, of which his brother, Walker Lyerly, was secretary and general manager. Yeager Manufacturing Company was engaged in the manufacture of furniture; and, on certain orders to plaintiff for lumber, notations made by Walker Lyerly were to the effect that payment was guaranteed by "E. Lyerly." There was no evidence that E. Lyerly had guaranteed payment, orally or otherwise, or had authorized Walker Lyerly to obligate him for such payment. The language upon which the present defendant relies is part of a discussion to the effect that, if an oral promise had been made by defendant, such oral promise would be within G.S. 22-1 because the evidence in that case did not disclose that E. Lyerly had "a personal, immediate, and pecuniary benefit in the transaction." While the de-

cision in *Gennett v. Lyerly, supra,* is fully supported on other grounds set forth in the opinion, it is noted that the opinion cites in support of the statement upon which the present defendant relies the original decision in *Peele v. Powell,* 156 N.C. 553, 73 S.E. 234, apparently over-looking the fact that this decision was reversed on rehearing in *Peele v. Powell,* 161 N.C. 50, 76 S.E. 698.

*Myers v. Allsbrook, supra,* involved an entirely different factual situation. There the plaintiff sued on defendant's alleged oral promise to pay his brother's pre-existing debt. Moreover, there was neither allegation nor evidence that the alleged oral promise was made for the defendant's benefit or that he had any personal, immediate or pecuniary interest in the transaction.

WALKER, J., in *Whitehurst v. Padgett,* 157 N.C. 424, 73 S.E. 240, citing *Peele v. Powell, supra,* said: ". . . a promise is not within the statute of frauds, if it is based upon a consideration and is an original one, and . . . it is original if made at the time or before the debt is created, and the credit is given solely to the promisor or to both promisors, as principals; . . ." The decision in the *Whitehurst* case is succinctly and accurately stated in the third headnote, *viz.:* "When a tenant of a farm has applied to a merchant to furnish him with fertilizers for making the crop on the leased premises, saying that the landlord would pay for them, the assertion of the tenant will not of itself render the landlord liable; but if the latter, when called upon by the merchant at the time of the transaction, says, 'All right, go ahead and furnish (the lessee) and I will see that you get the money,' his words may amount to a binding and sufficient promise under the statute of frauds, as he had a direct and pecuniary interest in the making of the crop as the landlord of the first promisor." In accord: *Dozier v. Wood,* 208 N.C. 414, 181 S.E. 336.

It is unnecessary to consider in detail the evidence as to what was said by defendant preceding the advancement by plaintiff of his own funds in payment of the six items aggregating $4,693.13. The evidence is uncontradicted that these amounts were advanced to discharge obligations of the corporation and that the corporation had no funds for the payment thereof. Suffice to say, the evidence was amply sufficient to support the jury's finding that defendant contracted and agreed with plaintiff "that he (defendant) would personally pay the plaintiff any sums plaintiff advanced to Winston-Salem Motors, Inc., as alleged in the Complaint."

Defendant testified that he advanced in excess of $23,000.00 to the corporation during the period plaintiff was general manager.

It is noted that the evidence does not disclose the name of any other stockholder or indicate that such other stockholder advanced additional funds or otherwise participated in the corporation's affairs. Defendant's testimony is explicit that, for the time being, he had advanced all the money he had or could borrow, but anticipated that he would thereafter receive additional funds from his professional earnings. (Note: According to plaintiff, defendant gave assurance that he would also obtain funds from an anticipated sale of his Myrtle Beach property.) In these circumstances, the advancements by plaintiff were made. There can be no doubt but that defendant was personally, directly and pecuniarily interested in the continuance in business of the corporation and would be the principal beneficiary if this were accomplished and the principal loser if it were forced out of business.

Under these circumstances, we are of opinion, and so hold, that G.S. 22-1 is not a bar to plaintiff's recovery on the alleged oral agreement.

Even so, defendant asserts that the court, in lieu of the first issue submitted, should have submitted an issue tendered by him, to wit: "Did the defendant make an original promise to plaintiff to repay loans made by plaintiff to Winston-Salem Motors, Inc.?" Suffice to say, the jury's answer to the first issue submitted established that defendant did make such original promise as alleged in the complaint. In this connection, see *Garren v. Youngblood, supra,* and *Taylor v. Lee,* 187 N.C. 393, 121 S.E. 659.

Defendant quotes this statement from 20 A.L.R. 2d 248: "Where the language used, together with the surrounding facts and circumstances, makes it doubtful whether the parties intended by the promise to create an original obligation or a collateral one to answer for the debt or default of another, the question is one of fact to be determined by the jury, or other trier of facts." As indicated, the rule embodied in the quoted statement is applicable when the particular expressions relied upon as constituting the alleged oral promise are of such doubtful meaning that diverse inferences may be drawn as to what the parties mutually understood. 49 Am. Jur., Statute of Frauds § 63. It has no application to the present factual situation.

The only inference that may be drawn from the evidence is that both plaintiff and defendant knew the company was in "desperate financial condition" when plaintiff made the advancements. Indeed, under the evidence, it would be fanciful to suggest that the advancements were made by plaintiff in reliance on the credit(?) of the corporation.

Defendant testified: ". . . there is no question but what he paid out these sums that have been testified. There was personal promise on my part, as distinguished from the corporation, that he would be paid only if these conditions were met." Asked whether he told plaintiff that he (defendant) "did make a good income and would see that he was paid anything that he did advance to the company," defendant answered: "Yes, I said that—yes, I did meet him. Yes, I said I had a good income. The amount was not $35,000.00. The wording was such that I would—that Mr. Warren would lose no money." Again: "I did testify a moment ago that it was my intention to pay Mr. Warren upon proper certification that certain sums were due, providing that things were done in a certain and specialized manner, and that when Mr. Warren left the company and certain things were discovered after he left, and we were unable to close the books, and we were unable to give an accounting, this contract was null and void."

It is noted that defendant, in his answer, simply denied he had entered into the oral contract alleged by plaintiff. He made no allegations to the effect that he had agreed personally to repay plaintiff but only on certain conditions. Defendant's evidence, as indicated, takes a different turn. The substance of his testimony is that he made the oral promise but is not liable because plaintiff failed to comply with certain conditions. These conditions are rather vaguely defined in defendant's testimony. The purport of his testimony is that plaintiff as general manager did not handle either the separate account for the resale of "traded-in" used cars and other transactions in the manner it was agreed he should do. Too, defendant's testimony questions the accuracy of plaintiff's accounting as to the handling of the "traded-in" used cars and the accuracy of plaintiff's testimony as to amounts received by plaintiff from the corporation or for which the corporation should receive credit. As to these matters, the evidence was in conflict. Indeed, under the evidence, it seems that the principal controversy on the first issue was not whether defendant made an original promise as alleged but whether such promise was made unconditionally or made subject to certain conditions.

It is noted that the court, with reference to the first issue, instructed the jury as follows: ". . . if you are satisfied from the evidence and by its greater weight that there was an agreement entered into but that it was on a condition or conditions, and not an unconditional promise to pay, it would be your duty to answer this first issue 'No.' And, in any event, if you are not satisfied by the greater weight of the evidence that the plaintiff and defendant contracted and agreed that

the defendant would personally pay to plaintiff any sums plaintiff advanced to Winston-Salem Motors, Incorporated, it would be your duty to answer this issue 'No.' " Under these circumstances, we find no error in the submission of the first issue or in the charge in relation thereto.

Having discussed so fully defendant's principal assignments of error, we refrain from particular discussion of defendant's assignments of error relating to the evidence and the court's instructions relevant to the second issue. Suffice to say, we have considered these assignments of error and none discloses error deemed sufficiently prejudicial to warrant a new trial.

No error.

HIGGINS, J., took no part in the consideration or decision of this case.