BURLINGTON INDUSTRIES, INC. v. MARTIN B. FOIL, JR., WILLIAM H. TAYLOR AND TUSCARORA COTTON MILL

No. 7319SC476

(Filed 8 August 1973)

1. **Frauds, Statute of § 5— promise to pay debt of another — writing required — exception**

    Though the Statute of Frauds requires that a promise to pay the debts of another be in writing, there is an exception where the promisor has such a direct, immediate, pecuniary interest in the subject matter of the principal debtor's contract so as to indicate that the guarantor has intended to adopt the original contract as his own. G.S. 22-1.

2. **Frauds, Statute of § 5— oral promise to pay debt of another — insufficiency to bind**

    Where the evidence tended to show that the indebtedness in question was fully accrued on 22 May 1971 but no one ever spoke to one defendant about the debt until 3 September 1971, his promise to see that the obligation would be paid did not in any way constitute him an original obligor, and trial court properly directed verdict in his favor in an action to recover the balance of the debt.

3. **Guaranty — unauthorized promise to pay debt of another — insufficiency to bind**

Where plaintiff sold yarn on credit to a fabric company upon the company president's promise that defendant cotton mill would guarantee the account, defendant mill was not bound by the unauthorized guaranty; nor did the defendant mill have such a direct, pecuniary interest in the fabric company's receiving credit from plaintiff so as to render defendant liable on the debt.

4. **Frauds, Statute of § 5— oral promise to pay debt of another — insufficiency to bind**

Where the evidence tended to show that the president of a fabric company negotiated a sale of yarn to the company on credit from plaintiff, the yarn was shipped beginning 6 April 1971, and defendant treasurer of the fabric company had no communications with plaintiff until 19 April 1971, evidence was insufficient to make defendant treasurer an original obligor; furthermore, where the evidence showed verbal but no written promises by defendant, the case came within the Statute of Frauds and the trial court properly directed verdict for defendant.

APPEAL by plaintiff from *McConnell, Judge,* 4 December 1972, Regular Civil Session of CABARRUS County Superior Court.

In this civil action plaintiff seeks to recover $55,577.58, being the balance due from the sale of yarn to Colonial Fabrics, Inc., (Colonial). Plaintiff contends that each of the defendants guaranteed the payment of the account by Colonial and that plaintiff extended the credit because of the verbal guaranty. At the close of the plaintiff's evidence, each of the defendants moved for a directed verdict under Rule 50. This motion was allowed, and the action of the plaintiff was dismissed.

*Sanford, Cannon, Adams and McCullough by E. D. Gaskins, Jr., Robert W. Spearman and J. Allen Adams for plaintiff appellant.*

*Jordan, Wright, Nichols, Caffrey and Hill by Charles E. Nichols and Lindsey R. Davis, Jr.; and Williams, Willeford and Boger by John Hugh Williams for defendant appellees.*

CAMPBELL, Judge.

In December 1970 Colonial was organized by the defendants Foil, Taylor and Edwin Fowler. Colonial had very little capital, and it was doing business on credit. Fowler was the President and General Manager and the active operator. During the time of the purchases involved in this case, namely, during April and May 1971, the capital stock of Colonial was owned with Fowler

owning 50% and Foil, Taylor and Mrs. Foil, the mother of Foil and the mother-in-law of Taylor, between them owning the remaining 50%. In addition to being a stockholder, Foil was also Director and Treasurer of Colonial. Taylor, likewise, in addition to being a stockholder of Colonial, was a Director and Secretary of Colonial.

Tuscarora is a corporation engaged in the textile business with its place of business in Mount Pleasant, Cabarrus County, North Carolina. Foil acted as a Director and President of Tuscarora and likewise was a stockholder. Taylor was a Director and Executive Vice-President and likewise a stockholder of Tuscarora. Foil and Taylor were minority stockholders and the majority of the stock of Tuscarora was owned by Mrs. Foil, the mother of Foil and the mother-in-law of Taylor, and by a trust estate created by the deceased husband of Mrs. Foil.

Colonial conducted its operations in Kannapolis, Cabarrus County, North Carolina, which was located some 20 miles from Mount Pleasant. The operations of Colonial consisted of purchasing yarn from producers of yarn such as the plaintiff and then having this yarn fabricated by other concerns. The fabricated product was then sold by Colonial; and with the proceeds of the sale, Colonel paid its obligations.

In the latter part of March 1971 Fowler, on behalf of Colonial, sought to purchase yarn from plaintiff. The salesman for plaintiff reported this to Jay Houston Barnes (Barnes), who was acting as the credit manager for the division of plaintiff which would be involved in the transaction. On March 30, 1971, Barnes telephoned Fowler seeking credit information. Fowler in turn advised Barnes to communicate with Foil who was associated with Fowler and was with Tuscarora. Fowler further told Barnes that Tuscarora would guarantee the account. There is no evidence that Fowler had any authority to speak for, much less bind, Tuscarora to any guaranty agreement.

Pending further investigation, Barnes authorized sales to Colonial; and beginning on April 6, 1971, plaintiff began shipping yarn to Colonial.

By April 15, 1971, plaintiff had shipped yarn with a value of $44,541.72 to Colonial. All of these shipments were based on extension of credit for 60 days.

On April 19, 1971, Barnes, for the first time, talked to Foil on the telephone. Barnes told Foil that shipments had already begun because of the guarantee and that Fowler wanted to increase the program. Foil told him not to increase the program and that he was trying to get Fowler to clear all purchases with him before any increase was made. Barnes told him at that time that plaintiff was looking to Tuscarora and Foil for payment. The next day, April 20, 1971, Barnes confirmed the telephone conversation by letter as follows:

"Confirming our telephone conversation yesterday, we are enclosing form, in duplicate, by which Tuscarora Cotton Mill, Inc. will guarantee the account of Colonial Fabrics, Inc. Please complete both sides of the form, returning one copy to us, the extra copy is for your file."

Thereafter, contrary to what Foil had said over the telephone about not increasing the program, plaintiff continued shipping yarn to Colonial until on May 6, 1971, the amount of shipments had reached $106,835.47. At that time Carl M. Aycock, the assistant to Barnes, terminated shipments because of a question concerning the execution of the guarantee. On May 13, 1971, Barnes again talked to Foil on the telephone and told Foil that he understood that the guarantee was not going to be executed. Foil told him that that was correct, that he had been advised by counsel that he could not sign the guaranty agreement on behalf of Tuscarora. Despite this, plaintiff renewed shipments of yarn until May 22, 1971, when the account had reached the total sum of $126,191.79. At that time plaintiff ceased shipments and never shipped any more yarn to Colonial.

On June 21, 1971, Colonial, for the first time, began making payments on the account.

On September 3, 1971, Barnes went to Kannapolis, North Carolina, and there saw Fowler and Taylor. This was the first time Taylor was seen or talked to about the entire transaction. At this time Taylor advised Barnes that he was taking an active interest in the operation of Colonial and would see that plaintiff was paid. On September 16, 1971, Barnes again went to Kannapolis because a check for $25,000.00 had not been paid by the bank on which it had been drawn by Colonial because Colonial had insufficient funds in the bank. On this occasion Taylor gave his personal check to Barnes for $25,000.00 payable to plaintiff on behalf of Colonial.

As of September 22, 1971, the account of Colonial to plaintiff stood at $55,577.58; and that is the amount which plaintiff now seeks from the defendants.

"A guaranty of payment is an absolute promise by the guarantor to pay a debt at maturity if it is not paid by the principal debtor. This obligation is separate and independent of the obligation of the principal debtor, and the creditor's cause of action against the guarantor ripens immediately upon the failure of the principal debtor to pay the debt at maturity. . . . " *Investment Properties v. Norburn,* 281 N.C. 191, 188 S.E. 2d 342 (1972).

[1]   In the instant case it is conceded that there was no written agreement as to the guaranty. G.S. 22-1 provides:

"No action shall be brought . . . to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith or some other person thereunto by him lawfully authorized."

There has been carved out an exception to this statute where the promisor has such a direct, immediate, pecuniary interest in the subject matter of the principal debtor's contract so as to indicate that the guarantor has intended to adopt the original contract as his own. This exception is known as the "main purpose rule." It is pursuant to this exception to the general rule that the plaintiff seeks to recover.

[2]   The plaintiff relies on the case of *Warren v. White,* 251 N.C. 729, 112 S.E. 2d 522 (1970), where the authorities are collected and reviewed. In that case the guarantor was found to be an original obligor and outside of the statute of frauds. The instant case is readily distinguishable from the *Warren* case. In the instant case, insofar as the defendant Taylor is concerned, the indebtedness was fully accrued on May 22, 1971; and no one ever spoke to Taylor or communicated with him until September 3, 1971. His promise to see that the obligation would be paid did not in any way constitute him an original obligor. The directed verdict in his favor and the dismissal of the plaintiff's case against him was correct.

[3]  While the evidence in this case shows that there had been from time to time business dealings between Tuscarora and Colonial, there is no evidence to show that Tuscarora had any direct, pecuniary interest in Colonial receiving credit from the plaintiff. Furthermore, the evidence clearly shows that no one with authority obligated Tuscarora to the plaintiff. In fact, the evidence is to the contrary; and when plaintiff sought to procure a proper guaranty agreement from Tuscarora, it failed to do so. The directed verdict in favor of Tuscarora and the dismissal of the plaintiff's action as to Tuscarora was correct.

[4]  While the evidence on behalf of the plaintiff when taken in the light most favorable to the plaintiff, as we are required to do in this instance, makes out a stronger case against Foil than it does as to the other two defendants, nevertheless, we find that the evidence is insufficient to make Foil an original obligor. The evidence shows verbal promises made by Foil but nothing in writing. We think the case, as to Foil, comes within the statute of frauds, G.S. 22-1, and that the trial court was correct in sustaining the directed verdict in favor of Foil and dismissing the plaintiff's action as to him.

Affirmed.

Judges HEDRICK and BALEY concur.