W. P. JENNINGS v. J. W. KEEL.

(Filed 27 February, 1929.)

**1. Fraud, Statute of—Promise to Answer for Debt or Default of Another —Applicability and Defenses—Consideration.**

Where one who is financially interested in a crop induces the landlord to part with his lien in order that the tenant might retain possession, and to sign an appeal bond of the tenant, and promises to save the landlord from harm thereon, and the landlord is required to and does pay the bond: *Held,* the release of the landlord's lien is sufficient consideration for the promise to save from harm, and the transaction does not fall within the provisions of C. S., 987, that a promise to pay the debt of another must be in writing.

2. **Appeal and Error—Review—Question Presented for Review or Necessary to Determination of Cause.**

> Where the answer to one issue is determinative of the case on appeal independently of the other issues submitted, the Supreme Court will not ordinarily consider exceptions arising upon the trial of the other issues.

3. **Appeal and Error—Review—Burden of Showing Error.**

> The verdict of the jury will not be disturbed on appeal when there is sufficient evidence to support it, in the absence of error of law in the trial.

APPEAL by defendant from *Barnhill, J.,* and a jury, at October Term, 1928, of NASH. No error.

The evidence on the part of plaintiff was to the effect that Henry Horne instituted a suit against G. T. Garner and B. G. Alford in a justice of the peace court, who rendered judgment against both.

W. P. Jennings testified in part that the defendant, Keel, "said a bond would have to be made for Garner, and I told him *I would not sign Garner's bond without I had his assurance and promise to protect me from cost or loss in the deal,* and Mr. Keel said it was unethical for a lawyer to sign his client's bond and insisted that I sign it with his promise to protect me. . . . *I signed the bond with Mr. Keel's assurance that he would save me from loss or cost.* (Judgment was rendered in the Superior Court in favor of Horne and against Garner and Jennings.) . . . I (Jennings) paid the bond. . . . I paid it under execution. . . . We had a meeting about taking over the Garner crop. Mr. Keel told me Garner owed him four or five hundred dollars. Garner was anxious to get his crop back, and I was anxious to turn it back to him, and the matter dragged along for a week or ten days. He said he would take up Garner's account and he got Garner and *had an agreement that he would give him one-half of the crop* over and above his debts if he would come between me and Garner and relieve him of the claim and delivery. It wasn't about the bond, but it was about the crop. We were in Mr. Keel's office, and before I released my claim for rent and surrendered collaterals he gave me the assurance that he would protect me against loss. . . . *Mr. Keel gave me the assurance to protect me against loss for the reason we were turning over collateral. . . . Upon that promise I surrendered my landlord's lien. . . . I didn't start out to furnish him supplies, but I finally did through Mr. Alford, and I became responsible for what he got from Alford.* Horne was a tenant on the farm under Garner, and some trouble arose between them and this resulted in a suit between Garner and Horne, my tenant and Garner's tenant. The trouble was about the crops on the farm. . . . I was responsible and the crops on the farm were responsible for what I *furnished. I had no writing about the bond, never had at any time had any writing.* . . . The crop was grown

on my farm. I had the rent and the supplies to collect out of it. I don't remember the amount Garner owed. We have the notes. He owed a considerable amount. Mr. Keel has paid every dollar due on these notes." The amount of the notes was $2,670.37.

In the case instituted in the justice of the peace court, upon appeal to the Superior Court Horne obtained judgment against Garner and Jennings for $200, and he (Jennings) had to pay the bond of $200. No judgment on appeal was rendered against Alford. Plaintiff called upon defendant to reimburse him, and he said that he was not liable, and this action was instituted.

B. G. Alford testified in part: "Garner lived on Jenning's farm, was trading with me. Jennings was responsible for everything Garner and his tenants got. He was responsible for everything Horne got and Horne traded with me. Horne brought suit against Garner and I was made a party to the suit at the trial at the advice of Mr. Keel. I went to the trial as a witness as to the indebtedness of Horne and carried my books there. . . . All of the accounts that Garner and his tenants owed us were paid by notes signed by Mr. Keel, and it was then that I refused to surrender my security unless he protected me from loss on account of the suit. He made a verbal agreement. He did not include the amount of the bond in the notes—there were three notes amounting to around $2,500, and this included everything that Garner and his tenants owed us. This included rent, supplies and everything. The magistrate's suit had not been finally settled. Mr. Jennings handled the notes. I got my money. After these papers were signed we had no further interest in the crops—none at all."

The issues submitted to the jury and their answers thereto were as follows:

"1. Did the plaintiff sign the appeal bond in the case of Horne *v.* Garner upon the promise and agreement of the defendant that he would indemnify and save the plaintiff harmless against any loss or damage by reason thereof? Answer: Yes.

2. Did the plaintiff surrender his landlord's lien upon the crops of G. T. Garner to the defendant upon the promise and agreement of the defendant to indemnify and save the plaintiff harmless against any loss or damage by reason of his surety upon the appeal bond in the case of Horne *v.* Garner as alleged? Answer: Yes.

3. In what amount, if any, is the defendant indebted to the plaintiff? Answer: $200."

The other material facts and assignments of error will be set forth in the opinion.

*Cooley & Bone for plaintiff.*
*Battle & Winslow for defendant.*

CLARKSON, J.  Plaintiff, W. P. Jennings, was the landlord, B. F. Alford was the supply merchant.  G. T. Garner was Jenning's tenant. Henry Horne was a subtenant of Garner on Jennings' land.  Horne sued Garner and Alford in a justice of the peace court for $200.  The defendant Keel in this action was attorney for Garner in that suit. Judgment was rendered for Horne against both Garner and Alford. They appealed to the Superior Court.  Plaintiff in this action signed Garner's appeal bond and testified, *"I signed the bond with Mr. Keel's assurance that he would save me from loss or cost."*  In the Superior Court Horne obtained a judgment for $200 against Garner and his surety, Jennings, on the appeal bond.  Jennings, who had to pay the judgment after execution was issued against him, now sues Keel on his promise. This promise was denied by Keel and he pleaded the statute of frauds, C. S., 987, as follows: "No action shall be brought whereby to charge an executor, administrator or collector upon a special promise to answer damages out of his own estate or to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith or some other person thereunto by him lawfully authorized."

B. F. Alford is out of the picture; in the Superior Court he was released.  The jury answered the first issue "Yes," which is as follows: "Did the plaintiff sign the appeal bond in the case of Horne *v.* Garner upon the promise and agreement of the defendant that he would indemnify and save the plaintiff harmless against any loss or damage by reason thereof ?"

The interesting question so ably discussed by the attorneys on each side as to whether the above statute of frauds is applicable to the facts in this case, we do not think on this record it is necessary to decide.

The jury answered the second issue "Yes," which is as follows: "Did the plaintiff surrender his landlord lien upon the crops of G. T. Garner to the defendant upon the promise and agreement of the defendant to indemnify and save the plaintiff harmless against any loss or damage by reason of his surety upon the appeal bond in the case of Horne *v.* Garner as alleged ?"

The jury also answered that defendant was indebted to plaintiff in the amount of $200.

On the evidence adduced by the defendant the jury could have readily answered the second issue "No," but did not do so, and answered it "Yes." This was entirely in their province.

The finding on the second issue in favor of plaintiff is sufficient to support the judgment.  This Court will not ordinarily consider excep-

tions arising upon the trial of other issues "When one issue, decisive of appellant's rights to recover has been found against him by the jury." *Ginsberg v. Leach,* 111 N. C., 15; *Lilly v. Cooperage Co.,* 194 N. C., at p. 254.

Was the evidence of plaintiff sufficient to be submitted to the jury on the second issue, and did plaintiff under the evidence have a cause of action against defendant? We think so. From the verdict of the jury, we consider only the evidence adduced by plaintiff.

As to whether plaintiff signing the bond of Garner at the request of Keel was such an obligation as to support a promise under the second issue, speaking to the subject, we find the law thus stated in 9 Cyc., 345, that "The compromise of a disputed claim may uphold a promise, although the demand was unfounded." *Beck v. Wilkins-Ricks Co.,* 186 N. C., at p. 214.

The plaintiff, W. P. Jennings, was the landlord; Garner the tenant; Horne the subtenant; Alford the supply merchant. What were the rights of Jennings to the crops? C. S., 2355, is as follows: "When lands are rented or leased by agreement, written or oral, for agricultural purposes, or are cultivated by a cropper, unless otherwise agreed between the parties to the lease or agreement, *any and all crops raised on said lands shall be deemed and held to be vested in possession of the lessor* or his assigns at all times, *until the rents for said lands are paid,* and until all the stipulations contained in the lease or agreement are performed, or damages in lieu thereof paid to the lessor or his assigns, and until said party or his assigns *is paid for all advancements made and expenses incurred in making and saving said crops.* A landlord to entitle himself to the benefit of the lien herein provided for, must conform as to the prices charged for the advance to the provisions of the article Agricultural Liens, in the chapter Liens. This lien shall be preferred to all other liens, and the lessor or his assigns is entitled, against the lessee or cropper, or the assigns of either, who removes the crop or any part thereof from the lands without the consent of the lessor or his assigns, or against any other person who may get possession of said crop or any part thereof, to the remedies given in an action upon a claim for the delivery of personal property." (Italics ours.)

It was in evidence on the part of plaintiff that he, Jennings, furnished Garner supplies through the time-merchant Alford and was responsible to Alford. Jennings under the law had a lien on all the crops raised on the land by Garner and his subtenant Horne. The crops raised on the land "shall be deemed and held to be vested in possession of the lessor," etc., until the "rents" and "all advancements" made and expenses incurred in making and saving the crops. There was a claim and

delivery taken out against Garner in respect to the crop. At that time the appeal of Garner with Jennings as surety for $200, from the justice of the peace to Superior Court was pending. It was in evidence on the part of plaintiff that Garner, Jennings' tenant, owed the defendant, Keel, some four or five hundred dollars, and they had a meeting about the crop and the defendant Keel stated that he had an agreement with Garner to take up Garner's account and Garner was to give him one-half of the crops over and above his debts. The defendant Keel gave three notes to plaintiff totalling some $2,670.37, which were paid. At that time the liability of plaintiff as surety on the $200 appeal bond was contingent on the recovery of Horne in the Superior Court against Garner.

This was the situation of the parties. Of course the premise of this decision is based on plaintiff's evidence, which the jury accepted as true. Plaintiff testified: "Mr. Keel gave me the assurance to protect me against loss for the reason we were *turning over collateral*. Mr. Keel said it was unethical for him to sign papers. Fix it up and I will save both of you from loss. Mr. Alford heard this. *Upon that promise I surrendered my landlord's lien.*"

The law applicable to the facts in this action is laid down in *White-hurst v. Hyman*, citing numerous authorities, 90 N. C., p. 489-90: "It is settled by many judicial decisions in construing this statute, and others substantially like it, that where there is some new and original consideration of benefit or harm moving between the party to whom the debt to be paid is due, and the party making the promise to pay the same, such case is not within the statute; *as where a promise to pay an existing debt is made in consideration of property placed by the debtor in the hands of the party promising, or where the party to whom the promise is made relinquishes a levy on the goods of the debtor for the benefit of the promisor, or where the party promising has a personal interest, benefit or advantage of his own to be subserved, without regard to the interests or advantage of the original debtor; as, for example, if a creditor has a lien on certain property of his debtor to the amount of his debt, and a third person who has an interest in the same property promises the creditor to pay the debt in consideration of the creditor's relinquishing his lien. Such promises are not within the statute, because they are not made 'to answer the debt, default or miscarriage of another person.'* It may be, the performance of the promise will have the effect of discharging the original debtor; but such discharge was not the inducement to, or the consideration to support the promise. The moving, controlling purpose of the promisor in such case is his own advantage, not that of the debtor. It not unfrequently happens that in a

great variety of business circumstances it becomes important in a valuable sense to third parties to discharge the debt of a debtor, or relieve his property from liability to the creditor for the benefit of such third parties, without regard to the benefit, ease or advantage of the debtor. The advantage to the third party, the promisor, is a sufficient consideration to support a contract separate from, and independent of, the debt to be discharged." (Italics ours.) *Handle Co. v. Plumbing Co.,* 171 N. C., 495; *Mercantile Co. v. Bryant,* 186 N. C., 551.

For the reasons given, in the judgment below, there is

No error.