J. M. Watson died on or about 14 February, 1919, in Cherokee County, owning land in said county. The plaintiffs are the children of the second wife and the defendants are the children of the first wife. It *Page 6 
was alleged that on 17 January, 1919, a short time before his death J. M. Watson executed two deeds, purporting to convey certain land owned by him to said Eliza Watson, his second wife, for life, and at her death to her children, Albert Watson and Clyde Watson. It was admitted that the plaintiff, Clyde Watson, was born 14 June, 1901, and that the plaintiff, Albert Watson, was born 30 July, 1902. It was also admitted that Eliza Watson, the second wife, died in August, 1928.
On or about 7 October, 1919, the children of the first marriage brought a suit against the widow and the children of the second marriage, to wit, Eliza Watson, Clyde Watson and Albert Watson, for the purpose of setting aside the deed made to them by J. M. Watson, the father of both plaintiffs and defendants. On 20 November, 1919, the clerk of the Superior Court appointed Eliza Watson, mother of Clyde Watson and Albert Watson, as guardian ad litem for said minors. Thereafter a consent judgment was entered in the cause by Judge B. F. Long. The judgment recites: "This cause is compromised upon the terms hereinafter set out, and by consent it is adjudged by the court that the parties plaintiff and defendant, except Eliza Watson, are the owners of the land described in the complaint." It was further ordered that certain of said lands involved in the suit "be sold by the commissioner hereinafter appointed, and the costs of this action be deducted therefrom and the remainder be distributed among the following children of J. M. Watson, share and share alike." All the children are named in the decree. It was further decreed that the widow, Eliza Watson, was to have all the personal property of the deceased, J. M. Watson. It was further ordered that S.W. Lovingood "is hereby appointed commissioner to sell the lands of said J. M. Watson . . . who will report sale to the clerk of this court for confirmation or rejection, and for the further orders of the court. This judgment may be signed out of term anywhere in North Carolina." Appended to the judgment is the following: "By consent. Cleve Watson, C. H. Watson, G. A. Watson, for selves and other plaintiffs; Eliza Watson, Albert Watson, Clyde Watson, guardian ad litem of Clyde Watson and Albert Watson, defendants." On 1 March, 1921, Judge Long entered another judgment in the cause reciting that the cause had been compromised upon certain conditions set out in the judgment. This judgment was consented to by attorneys representing the plaintiffs and the defendants. Lovingood, the commissioner appointed to sell the land reported the sale to the court, stating that he had received the sum of $1,670. Lovingood was appointed guardian for Clyde Watson and Albert Watson in October, 1921. On 15 January, 1927, said guardian filed a report with the clerk of the Superior Court of Cherokee County, disclosing that he had disbursed and paid to Clyde Watson and Albert Watson the net proceeds arising from the sale of the land. *Page 7 
On or about 11 June, 1929, Clyde Watson and Albert Watson brought a suit against the defendants, who were the children of the first marriage, alleging that they were the owners in fee of the lands conveyed by J. M. Watson to them by deed dated 17 January, 1919, and that the defendants claim an interest or estate in said property, which constituted a cloud upon their title. The defendants answered, setting up the consent judgment signed by B. F. Long, judge presiding, heretofore referred to. It was admitted that the plaintiffs "are now the owners of said land unless they have been divested of said title by reason of a certain judgment in another action." This admission apparently refers to the consent judgment entered by Judge Long, heretofore referred to.
Lovingood testified that he handled the money derived from the sale of the land as guardian for Clyde Watson and Albert Watson. He said: "The residue that belonged to these boys, I took back from the clerk what was left, and I qualified as guardian and paid these boys from time to time, except at different times when they would have to have this thing and another thing, books, clothes and shoes, and after they became 21 years of age they came and I paid them in full. The money came from land I sold as commissioner. . . . They understood it was the money and part of their estate. They got the same amount of money the other heirs got." The guardian further testified that he settled with one of the boys in May, 1922, and with the other one in January, 1927. Albert Watson, one of the plaintiffs, testified that he did not sign the consent judgment, but that he knew "Mr. Lovingood as commissioner had sold part of the land. I knew he was my guardian. I made a settlement with him as guardian. He paid out some expense for me and paid over some amounts to me. I knew this was the money that he got out of the sale as commissioner of some of the lands. I am 29 years old." Clyde Watson, the other plaintiff, testified that he was 30 years old and did not sign the consent judgment. He further testified: "I knew a suit had been brought to set aside both deeds to all the lands to my mother, my brother and myself. . . . I knew Mr. Sam Lovingood was appointed commissioner to sell it, and I got my part of the money, and I knew he paid me for my part of that land. I accepted it. When I became 21 I knew when he settled on the final account and he and I agreed on that." Mr. M. W. Bell testified that he was attorney for the defendants in the present suit, who were the plaintiffs in the former suit, and that Eliza Watson was duly appointed guardian ad litem for Clyde Watson and Albert Watson, and that as such she accepted service on 20 November, 1919, and that she filed an individual answer in the cause, and that the plaintiffs in this suit were about 17 and 18 years of age respectively. *Page 8 
The following issues were submitted to the jury:
1. "Are the plaintiffs the sole owners of the land sued for in this action?"
2. "If not, are they tenants in common with the other heirs at law of J. M. Watson, deceased?"
3. "What interest have the plaintiffs in the land sued for?"
The trial judge instructed the jury to answer the first issue "No," the second issue "Yes," and the third issue "two-thirteenths."
From judgment upon the verdict, the plaintiff appealed.
It was admitted by counsel in the trial of the case at bar that the plaintiffs are the owners of the lands in dispute unless "they have been divested of said title by reason of a certain judgment in another action." The action referred to was instituted by the defendants in this suit, who are the children of the first marriage, against the children of the second marriage alleging that the deed made by the deceased J. M. Watson to the widow and children of the second marriage was secured by the exercise of dominating influence upon an old man by the second wife. A purported consent judgment was entered by Judge Long in 1919, decreeing that the parties were tenants in common as to certain land, and further ordering other portions of land to be sold by Lovingood, the commissioner appointed for such purpose. The plaintiffs in this action were minors at that time. The plaintiff, Clyde Watson, became of age on 14 June, 1922, and the plaintiff, Albert Watson, became of age on 30 July, 1923. After they became of age they received from Lovingood the net proceeds of the land sold, remaining in his hands as guardian. They testified at the trial that they knew the source from which the money was derived and accepted it. Notwithstanding, this suit to set aside the consent judgment was not instituted until 1929. The evidence disclosed that the mother, Eliza Watson, was appointed guardian ad litem, and that she accepted service of summons and filed an answer. While the evidence is not satisfactory, doubtless due to the fact that the courthouse was burned, the fact remains that the plaintiffs, when they became of age, accepted proceeds derived from a sale of land by virtue of the decree which they now attempt to set aside. Moreover, the money was received and accepted with full knowledge of all the vital facts. This fact-status invokes the application of the principle declared in Williams v. Williams, 196 N.C. 675, 146 S.E. 716, which was stated by Stacy, C. J., as follows: "The *Page 9 
defendant, after reaching his majority and with full knowledge of all the facts, accepted $360 for his one-sixth interest in the lands of Robert Williams, deceased. This was a ratification of the sale previously made, and the Court will not now permit him to upset the proceeding by motion in the present cause filed more than four years after such ratification." See, also, Smith v. Gray, 116 N.C. 311, 21 S.E. 200.
No error.