MRS. EMMA GARREN v. B. H. YOUNGBLOOD.

(Filed 10 October, 1934.)

1. **Trial D a—On motion of nonsuit all the evidence is to be considered in light most favorable to plaintiff.**

    On a motion as of nonsuit, all the evidence, whether offered by plaintiff or elicited from defendant's witnesses, is to be considered in the light most favorable to plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom. C. S., 567.

2. **Frauds, Statute of, A a — Promise to answer for debt held original promise not coming within statute of frauds.**

    Plaintiff, a depositor in a bank, went to the bank with the intention of withdrawing her deposit, and was persuaded from withdrawing her funds by representations of the bank's soundness made by the vice-president, director and stockholder of the bank, and by his personal guaranty against loss of her deposit by the bank's insolvency: *Held*, the guaranty of payment made by the vice-president, director and stockholder of the bank was an original promise to answer for the debt, upon sufficient consideration, and does not come within the provisions of the statute of frauds, C. S., 987, and upon the insolvency of the bank and loss to the depositor the plea of the statute is not a valid defense.

3. **Estoppel C d—Plaintiff held not estopped by filing claim with bank for deposit from suing on individual's guaranty against loss.**

    Plaintiff was persuaded from withdrawing her deposit in a bank by the personal guaranty of her deposit by the vice-president, director and stockholder of the bank. Upon the failure of the bank she filed a claim with the liquidating agent for the amount of her deposit: *Held*, plaintiff was

not estopped by filing her claim with the bank from bringing suit on the guaranty, her action in filing the claim and obtaining what dividends she could on the deposit being to the interest of the guarantor.

**4. Guaranty B a—Guaranty in this case held guaranty of payment and not guaranty of collection.**

Allegation and evidence that defendant guaranteed plaintiff's deposit in a bank are held sufficient to constitute a guaranty of payment, and not merely a guaranty of collection, and plaintiff's right of action is held to have accrued upon the insolvency of the bank and its inability to pay the deposit on demand, and plaintiff was not required to wait until the liquidation of the bank and the payment of all dividends on her deposit before instituting action.

**5. Trial E c—Charge to jury in this case held sufficiently full.**

Where the charge of the court fully sets forth all substantive, material and essential questions of law arising upon the facts necessary to a determination of the controversy, the charge will not be held for error upon appellant's exception to its sufficiency, it being incumbent on appellant to have requested special instructions if he desired a fuller and more specific instruction on any aspect of the case.

APPEAL by defendant from *Finley, J.,* and a jury, at April-May Civil Term, 1934, of HENDERSON. No error.

This is an action brought by plaintiff against the defendant to recover $1,520.59, with interest from 18 December, 1932. The plaintiff, an old woman 72 years of age, lived in Fletcher, Henderson County, North Carolina. She had lived there about 35 years and had known the defendant since he was a little boy. In the village was the Bank of Fletcher. The defendant lived in Fletcher all his life. He was vice-president, director and stockholder of the Bank of Fletcher. He had a pretty good deposit in the bank, some $1,800, and owed the bank some money. He ran a grocery store in Fletcher, had some trucks and a lot of land. On 20 November, 1930, he was in Asheville when the Central Bank and Trust Company closed its doors and returned to Fletcher in the afternoon.

The plaintiff testified in part: "I went to the Bank of Fletcher for the purpose of withdrawing this money. As a result of what I was told I went to get the money. I went to the door of the bank and it was shut, and I went to the window and Mr. Sumner says, 'Let her in,' and Mr. Youngblood came to the door and took me through the door and into the office of the bank, and Mr. Youngblood says, 'I will insure your money. It is safe here.' And after some argument he repeated, 'I will insure you. It is safe.' And Mr. Youngblood said, 'This is a sound bank.' I went there to withdraw my money and when Mr. Youngblood said it was safe I went off satisfied. Mr. Youngblood told me my money was all right and I trusted him. . . . The 20th of November, according to my recollection, is the date I went to the bank to withdraw my money.

(It is admitted that the bank closed on 18 December, 1930.)    The book which is shown me is my bank book.    I thought I had it at home.    After the bank closed, I proved my claim against the bank.    I went down to the bank and filed a claim for the amount of my money against the bank. . . .    The Bank of Fletcher reopened shortly after it closed and I went to the bank several times thereafter and saw it open and in operation.    I signed a contract permitting the bank to reopen. . . . Since I brought this suit, the bank has paid me a dividend of twenty per cent of my deposit."

It was in evidence that the bank would pay 50c. on the dollar.    It closed on 18 December, 1930, and reopened 26 January, 1931.    Those who did not sign the contract had the privilege of withdrawing their funds immediately upon the bank's reopening.    The records do not disclose any refusal on the part of the bank to permit withdrawing of funds at any time by persons who refused to sign the contract.    There was nothing to prohibit the withdrawal of funds unless the depositor entered into a similar contract as Mrs. Garren.    The bank remained open the second time for about 18 months and did a general depositing and checking business.    The Corporation Commission ruled that unless a contract was signed to the contrary, a depositor had the right to withdraw funds upon the subsequent opening of the bank, and this course was followed. On 17 December, 1930, at a meeting of the directors, the defendant being present, an order was made to close the bank.

Defendant agreed to guarantee the deposit account of Miss Redden and paid her and had some of the depositors to sign the agreement to reopen.    The defendant testified, in part, speaking of plaintiff's conversation with him: "I think it was on the outside of the bank.    I am not certain as to the day.    She asked me if I thought the bank was all right. I told her I thought it was, that I had my money there and the kids had their money there.    I did not tell her that I would insure her money in the bank.    And did not tell her I would pay any loss that she might sustain in the bank if the bank closed.    All I said was that I thought the bank was all right; that I had my money there and that my children had their money there."

The issues submitted to the jury and their answers thereto were as follows: "(1) Did the plaintiff have on deposit in the Bank of Fletcher the sum of $1,520.59 on 20 November, 1930?    A. (Yes, by consent.) (2) Did the defendant B. H. Youngblood enter into an agreement with the plaintiff guaranteeing to the plaintiff that he would be personally responsible for any loss she might sustain if said funds were permitted to remain on deposit in said bank, as alleged in the complaint?    A. Yes. (3) If so, did the defendant breach said guarantee agreement?    A. Yes. (4) Was the Bank of Fletcher insolvent on 20 November, 1930, and/or

18 December, 1930? A. Yes. (5) What amount of damages, if any, is the plaintiff entitled to recover of the defendant by reason of said alleged breach? A. $760.00, without interest."

The court below rendered judgment on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The necessary ones and material facts will be set forth in the opinion.

*L. B. Prince and Ewbank & Weeks for plaintiff.*
*Redden & Redden and Shipman & Arledge for defendant.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence the defendant made motions in the court below for judgment as in case of nonsuit, C. S., 567. The court below overruled these motions and in this we can see no error.

Upon a motion as of nonsuit, all the evidence, whether offered by the plaintiff or elicited from defendant's witnesses, is to be considered in the light most favorable to the plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom. We think the evidence sufficient to be submitted to the jury.

The main question presented for our determination: Was the promise an original one upon sufficient consideration, which made defendant liable to plaintiff, or was it such that under the statute of frauds, C. S., 987, it had to be in writing? We think the promise an original one and upon sufficient consideration.

In *Handle Co. v. Plumbing Co.*, 171 N. C., 495 (501-502), speaking to the subject: "This being so, the promise, if made as alleged, was not within the statute of frauds, but it was an original promise founded upon a distinct consideration moving to the plaintiff at the time, and was not simply collateral and superadded to that of Wooten & Renigar to pay the debt. Our case falls within the principle stated in *Dale v. Lumber Co.*, 152 N. C., 651, where the matter is clearly stated by *Justice Hoke,* who, quoting from the well-considered case of *Emerson v. Slater,* 63 U. S., 28, at p. 43, said: 'Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability.' " This position has been sustained and applied in other cases of the same Court, notably in *Davis v. Patrick,* 141 U. S., 479, in which it was held: "In determining whether an alleged promise is or is not a promise to answer for the debt of another, the following rules may be applied: (1) If the promisor is a stranger to the

transaction, without interest in it, the obligations of the statute are to be strictly upheld; (2) but if he has a personal, immediate, and pecuniary interest in a transaction in which a third party is the original obligor, the courts will give effect to the promise. *The real character of a promise does not depend altogether upon form of expression, but largely upon the situation of the parties, and upon whether they understood it to be a collateral or direct promise."* (Italics ours.) *Mercantile Co. v. Bryant,* 186 N. C., 551; *Jennings v. Keel,* 196 N. C., 675; *Dillard v. Walker,* 204 N. C., 16 (20).

We do not think that the agreement of the plaintiff that the bank could continue to operate was inconsistent with her right of action on defendant's promise to her, so as to estop her. When she went to withdraw her money she had the direct promise of defendant to insure her money, that it was safe, the bank sound, the money was all right, and she trusted him. We see no reason why filing her claim on the bank would have the effect to release defendant. It was to his interest that she reduce her claim on him by obtaining what dividends she could from the bank, and acting as a prudent person would do under the circumstances.

The plaintiff alleged in her complaint, in part: "That on or about 20 November, 1930, the defendant B. H. Youngblood, whom this plaintiff had known for a long period of time, and in whom she had the utmost confidence, and who she knew to be a director and officer in said bank, having ascertained that plaintiff intended to withdraw her funds from said bank, urged the plaintiff that she allow her funds to remain in said bank, and then and there assured the said plaintiff that the said bank was solvent and guaranteed to the said plaintiff that the said bank was solvent and that he would see that she suffered no loss, and that plaintiff, although she had definitely decided to withdraw her funds from said bank, relying solely upon the assurances, promises, representations and guarantees of the said bank, decided to allow her funds to remain in said bank and did allow them to remain in said bank, said funds being in the amount of $1,520.59, as the proximate result of which the plaintiff has suffered a total loss of the said sum of $1,520.59," etc.

It is contended by the defendant, in part: "That he did not owe plaintiff anything, but, according to the plaintiff's evidence, insured her against loss. In other words, if he were a guarantor he became liable upon default of the bank, but not until after the plaintiff had exhausted her remedy against the bank."

We think that the language in the complaint and the evidence sufficient to support the verdict. In *Jenkins v. Wilkinson,* 107 N. C., 707 (709), it is said: "There is a plain distinction between a guaranty of payment and a guaranty of collection. The former is an absolute prom-

BANK *v.* BRIDGERS.

ise to pay the debt at maturity, if not paid by the principal debtor, and the guarantee may begin an action against the guarantor. The latter is a promise to pay the debt upon the condition that the guarantee shall diligently prosecute the principal debtor without success.' *Jones v. Ashford,* 79 N. C., 173; Baylie's Sureties and Guarantors, 113." *Trust Co. v. Godwin,* 190 N. C., 512; *Trust Co. v. Clifton,* 203 N. C., 483 (485).

We think, on plaintiff's evidence, that this is a guarantee of payment, and under the facts and circumstances of this case plaintiff's right of action had accrued when she instituted the suit.

The charge of the court below gave the contentions of both parties fairly. In fact, gave four long contentions and fifth, a requested charge, as a matter of law, in the language prepared by defendant. There is no exception by defendant in the record to the charge as given. The exceptions and assignments of error to this Court are to the effect that the court below in its charge failed to define guaranty and what was necessary to constitute insolvency. We think, taking the charge as a whole, the defendant's alleged contract with plaintiff was fully set forth and explained by the court below and the question of insolvency fully considered, if that issue was material to the determination of the case. The defendant, if it desired more full and specific instructions, should have asked for them. *Davis v. Long,* 189 N. C., 129 (137).

We think in the charge, all the substantive, material and essential questions of law arising on the facts to determine the controversy were fully set forth by the court below. *Moss v. Brown,* 199 N. C., 189.

The question was one mainly of fact, for the jury. It has found with plaintiff; in law we find

No error.