TYSON FOODS, INC. v. KATIE AMMONS AND HUSBAND, BENNIE AMMONS; JOHN G. HARRINGTON AND WIFE, JESSIE RUTH HARRINGTON; AND A. M. COOKE AND WIFE, JESSICA M. COOKE

No. 8420SC1118

(Filed 2 July 1985)

1. **Frauds, Statute of § 5.1— indirect benefit to stockholder—main purpose doctrine inapplicable**

    Defendant's alleged oral guaranty of a poultry company's debt for poultry purchased from plaintiff did not come within the "main purpose doctrine" exception to the statute of frauds where plaintiff's evidence merely established an indirect benefit to defendant by virtue of her position as an officer and stockholder of the poultry company. G.S. 22-1.

2. **Fraud § 12— sufficient evidence of fraud**

    Plaintiff's evidence was sufficient to go to the jury on the issue of fraud by defendant corporate officer where it tended to show that plaintiff informed defendant that personal guaranty agreements would be required before addi-

tional poultry items would be delivered to the corporation; plaintiff sent six guaranty agreements to the corporation to be signed by the six corporate stockholders; defendant told plaintiff's credit manager that the guaranty agreements had been executed by five of the six stockholders and that they were being forwarded to plaintiff; based upon this representation, plaintiff shipped nearly $40,000 worth of poultry items to the corporation; in fact, the guaranty agreements had not been executed and were never forwarded to plaintiff; and the total amount due for the poultry items remains unpaid. The issue of whether plaintiff reasonably relied upon defendant's representations was for the jury to determine.

APPEAL by plaintiff from *Wood, William Z., Judge.* Judgment entered 11 June 1984 in Superior Court, MOORE County. Heard in the Court of Appeals 14 May 1985.

Plaintiff seeks to recover $39,330.77 plus interest, the balance due plaintiff for the delivery of chickens to Cooke's Wholesale Poultry Company. Cooke's Wholesale Poultry Company is a North Carolina Corporation that filed for bankruptcy in August, 1979.

Plaintiff's complaint alleges that the defendants, officers and shareholders of Cooke's Wholesale Poultry Company, are jointly and severally liable for an amount of $39,330.77, since plaintiff delivered poultry items to Cooke's Wholesale Poultry Company in reliance on defendants' guaranty of payment of its account. The complaint also alleges, alternatively, that defendants fraudulently induced plaintiff to ship to Cooke's Wholesale Poultry Company the poultry items. The defendants' answer denies the guaranty alleged to have been made to plaintiff and alleges that plaintiff's complaint fails to state a claim against defendants upon which relief may be granted. The answer also specifically pleads G.S. 22-1, North Carolina's statute of frauds, as a defense.

The evidence presented tends to establish the following: Prior to 1 January 1979, plaintiff had provided poultry items to Cooke's Wholesale Poultry Company pursuant to a bank guaranty, which by its terms terminated "on or before December 22, 1978." Plaintiff informed Katie Ammons, operating officer of Cooke's Wholesale Poultry Company, that after 22 December 1978, additional bank credit or a personal guaranty would be required before any additional deliveries would be made. Financial statements, indicating Cooke's Wholesale Poultry Company's net worth to be approximately $500,000.00, were forwarded to plaintiff, who thereafter drafted and sent to Cooke's Wholesale

Poultry Company six guaranty agreements to be signed by the defendants and returned.

Plaintiff's credit manager testified that in early January 1979, Katie Ammons told him that "everything was in order," the guaranty agreements would be sent "as soon as possible," and all six signatures had been obtained "with the exception of her husband." Plaintiff made deliveries of poultry items on 10 January 1979 through 9 February 1979. Plaintiff did not receive the guaranty agreements from Cooke's Wholesale Poultry Company and there remains an outstanding balance of $39,330.77.

After plaintiff rested, defendants made a motion for directed verdict pursuant to Rule 50 of the North Carolina Rules of Civil Procedure. The presiding judge allowed defendant's motion and entered judgment for defendants. Plaintiff appealed.

*Seawell, Robbins, May, Rich & Scarborough, by P. Wayne Robbins, for plaintiff appellant.*

*Cameron, Hager & Kinnaman, P.A., by Richard B. Hager, for defendant appellees.*

MARTIN, Judge.

Plaintiff concedes that the trial court acted properly in granting defendants' motion for directed verdict as to all defendants except Katie Ammons. Plaintiff contends that the evidence was sufficient to submit his case against defendant Ammons to the jury on two grounds: (1) the establishment of an oral guaranty agreement protected from the statute of frauds by the main purpose doctrine; and (2) the establishment of the essential elements of fraud. Considering the evidence in the light most favorable to plaintiff, resolving all conflicts and giving plaintiff the benefit of every inference reasonably drawn in his favor, we find the evidence insufficient as a matter of law on the first ground to justify a verdict for plaintiff but sufficient to go to the jury on the second ground.

Plaintiff first alleges that defendant Ammons personally guaranteed Cooke's Wholesale Poultry Company's account and that poultry was sent on credit to the corporation in reliance on Ammons' personal guaranty. A guaranty of payment is defined as

an absolute promise by the guarantor to pay a debt at maturity if it is not paid by the principal debtor. This obligation is separate and independent of the obligation of the principal debtor, and the creditor's cause of action against the guarantor ripens immediately upon the failure of the principal debtor to pay the debt at maturity.

*Investment Properties v. Norburn*, 281 N.C. 191, 195, 188 S.E. 2d 342, 345 (1972).

[1] Plaintiff contends that Ammons' oral guaranty is not within North Carolina's statute of frauds, G.S. 22-1, because Ammons had a direct, immediate, and pecuniary interest in Cooke's Wholesale Poultry Company's transactions with plaintiff. G.S. 22-1 provides in pertinent part as follows:

No action shall be brought . . . to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith or some other person thereunto by him lawfully authorized.

North Carolina has recognized the "main purpose doctrine" as an exception to the statute of frauds, and our Supreme Court has often defined the exception with the following language from *Emerson v. Slater*, 63 U.S. (22 How.) 28, 43, 16 L.Ed. 360, 365 (1859):

. . . [W]henever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability.

*See, e.g., Warren v. White*, 251 N.C. 729, 112 S.E. 2d 522 (1960); *Garren v. Youngblood*, 207 N.C. 86, 176 S.E. 252 (1934).

We hold that plaintiff's evidence was insufficient as a matter of law to justify a verdict for plaintiff on the ground that the

main purpose doctrine protects Ammons' oral statements from the statute of frauds. The majority rule, as adopted by our Supreme Court, states that the benefit to be derived from one's ownership of stock or holding the position of an officer or director of a corporation "is too indirect or remote to invoke the application of the main purpose rule. Something more — some other expected benefit or advantage to be gained by making the promise — is required to make the main purpose rule applicable." *Burlington Industries v. Foil*, 284 N.C. 740, 750, 202 S.E. 2d 591, 600 (1974). Plaintiff's evidence merely establishes the indirect benefit which would accrue to Ammons by virtue of her position as a stockholder and officer; it fails to establish the required direct interest on the part of Ammons in Cooke's Wholesale Poultry Company's transactions with plaintiff. The evidence, taken as true, is too indirect and remote to invoke application of the main purpose doctrine.

[2]   Plaintiff also alleges that Katie Ammons made a promissory misrepresentation with the intent to induce the plaintiff to ship to Cooke's Wholesale Poultry Company the poultry items. In order to make out a case of actionable fraud, plaintiff must show:

> (a) that defendant made a representation relating to some material past or existing fact; (b) that the representation was false; (c) that defendant knew the representation was false when it was made or made it recklessly without any knowledge of its truth and as a positive assertion; (d) that defendant made the false representation with the intention that it should be relied upon by plaintiffs; (e) that plaintiffs reasonably relied upon the representation and acted upon it; and (f) that plaintiffs suffered injury.

*Johnson v. Insurance Co.*, 300 N.C. 247, 253, 266 S.E. 2d 610, 615 (1980).

Defendant Ammons' representation to plaintiff was specific, definite, and materially false. She told plaintiff's credit manager that the guaranty agreements had been executed by five of the six individuals whose signatures were needed and that the guaranty agreements were being forwarded to plaintiff. Based upon this representation, plaintiff shipped nearly $40,000.00 worth of poultry items to Cooke's Wholesale Poultry Company on credit. In fact, the guaranty agreements had not been executed, they

were never forwarded to plaintiff, and there remains an outstanding balance of $39,330.77. We believe that Ammons' statements constitute a positive and definite misrepresentation of a character to induce action by a reasonable person. *See Keith v. Wilder*, 241 N.C. 672, 86 S.E. 2d 444 (1955).

Defendants maintain that plaintiff's reliance on Ammons' statements that five of the six individuals had signed the guaranty agreements was unreasonable. They base this contention on plaintiff's established procedure for extending credit, i.e., plaintiff was willing to extend credit only if all six guaranty agreements were signed and returned. The law does impose upon the individual the duty to exercise ordinary prudence in relying upon persons with whom they conduct their business affairs. *See Gray v. Edmonds*, 232 N.C. 681, 62 S.E. 2d 77 (1950). However, where reasonable men could differ with respect to whether a party acted with reasonable care, it remains in the province of the jury to apply the reasonable man standard. *Gladstein v. South Square Assoc.*, 39 N.C. App. 171, 249 S.E. 2d 827, *disc. rev. denied*, 296 N.C. 736, 254 S.E. 2d 178 (1979). We conclude that based on this record there is sufficient evidence upon which reasonable men could form divergent opinions concerning whether plaintiff reasonably relied upon the representations of Ammons. Plaintiff is therefore entitled to have the reasonableness of its reliance considered by a jury.

In conclusion, we affirm the judgment of the trial court as to all defendants except Katie Ammons. The order dismissing plaintiff's claim against defendant Ammons on the theory of an oral guaranty protected from the statute of frauds by the main purpose doctrine is also affirmed. The order dismissing plaintiff's claim against defendant Ammons on the theory of fraud is reversed, and the cause is remanded for trial on that issue.

Affirmed in part; reversed in part and remanded.

Judges ARNOLD and PARKER concur.